MATT G. REYNOLDS, Receiver, Respondent, v.
BEN GERDELMAN, Appellant.

**St. Louis Court of Appeals, November 3, 1914.**

1. **CORPORATIONS: Misapplication of Corporate Funds: Liability of Payee.** Where one receives the check of a corporation, executed by one of its officers, in payment of a debt known by the creditor to be such officer's private debt, the check carries notice on its face of its irregular and illegal character, and the creditor accepting it takes the risk of being called on to restore the proceeds.

2. ———: ———: ———: **Sufficiency of Evidence.** In an action by the receiver of a corporation against one who accepted a check of the corporation, executed by its secretary, prosecuted on the theory that defendant was liable because the check was received by him in payment of the secretary's personal obligation, evidence *held* insufficient to establish that the check was used in payment of the secretary's personal obligation, and hence it is *held* plaintiff was not entitled to recover.

3. **INSURANCE: Rights of Unlicensed Corporation: Use of Corporate Funds: Liability of Payee.** Under Sec. 6900, R. S. 1909, which provides that when a certificate of incorporation shall have been issued to the corporators of an insurance company, they shall be a body corporate and may organize and open books for subscriptions and keep them open until the whole amount specified in the charter is subscribed, but that it shall not be lawful for such company to issue policies or transact any business of any other kind or nature until the corporators have fully complied with the requirements of the

article so as to entitle the company to a license to do business as an insurance company, an insurance company, on receiving its certificate of incorporation, becomes a corporate entity, authorized to contract for the sale of its capital stock, and hence a check issued by the secretary of such a company in its name and against funds standing in its name, before it was licensed to do business as an insurance company, could not be held illegal, as against one who received it in due course of business, so as to charge him with liability to the receiver of the company for its proceeds, on the theory that the company had no authority to transact any business whatever; nor could he be held liable on the theory that he was bound to take notice that the check was drawn upon funds derived from the sale of stock, which could not lawfully be used in the payment of preliminary expenses, where the evidence did not disclose that any such funds were so used, or that any funds belonging to the company were thereby misused.

4. MONEY HAD AND RECEIVED: Prerequisites to Recovery: Equitable Rights. An action for money had and. received, although maintainable at law, is of an equitable character, governed by principles of equity, and, in general, lies whenever one person has received money belonging to another, which, in justice and good conscience, he should not be permitted to retain; a fact essential to the remedy being, that the person who received the money is not entitled, in good conscience, to retain it.

5. ———: ———: ———. In an action by the receiver of a corporation to recover the proceeds of a check executed by the secretary of the corporation, *held* that the action being one for money had and received, and the evidence being such as to support an inference that defendant in good faith furnished labor and supplies, and received the check in payment therefor, and there being no evidence tending to show that he was not entitled, in equity and good conscience, to retain the proceeds thereof, plaintiff was not entitled to recover.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

REVERSED.

*Julian Laughlin* for appellant.

185MoApp12

*John S. Leahy* and *Chase Morsey* for respondent.

(1) The Continental Assurance Company having obtained no license to do an insurance business had no authority to transact any business of any kind or nature except to open books for subscriptions to its capital stock. Ellerby v. Bank, 109 Mo. 445; R. S. Mo. 1909, sec. 6900. (2) All persons dealing with the Assurance Company were bound to take notice of its limited powers. Ellerby v. Bank, 109 Mo. 445. (3) A check given by a corporation in payment of a debt of one of its officers bears notice on its face of its illegal character. St. Louis Charcoal Co. v. Lewis, 154 Mo. App. 548; Kitchen v. Teasdale, 105 Mo. App. 468; Washington v. Vette, 77 Mo. App. 448; Hamilton v. Marks, 63 Mo. 167; Lee v. Smith, 84 Mo. 309; Bank v. Edwards, 243 Mo. 553. (4) Defendant cannot be an innocent holder for value of the check in controversy for the following reasons: First, because he is bound to know the limited powers of the insurance company. Ellerby v. Bank, 109 Mo. 445. Second, because defendant is a primary party to the check. Bank v. Edwards, 243 Mo. 553. Third, because defendant gave no value for the check.

ALLEN, J.—This is an action for money had and received. The plaintiff is the receiver of the Continental Assurance Company of America, a corporation, and sues to recover the sum of $52.85, being the proceeds of a check issued by said corporation to the defendant. The cause was tried below by the court, without a jury, resulting in a judgment for plaintiff, and is here upon the defendant's appeal.

The evidence discloses that the Continental Assurance Company of America was incorporated under the laws of the State of Missouri to do an insurance business. It seems that a certificate of incorporation had been issued to the incorporators thereof, but that

the latter never succeeded in obtaining subscriptions to all of its capital stock and the company never received a license to transact business in the State as an insurance company.

At the time of the transaction here in question, to-wit, January 7, 1910, the defendant was conducting, in a small way, a business of repairing automobiles, and furnishing automobile supplies. In the course of his business he received and cashed the check in question, which was executed in the name of the Assurance Company, by Harry B. Gardner, secretary.

On behalf of plaintiff there was nothing whatsoever to show for what the check was issued. A notation upon a stub in the Assurance Company's check book was to the effect that the check had been issued "for H. B. Gardner," the latter being then secretary of the company. The defendant testified that he could not recall the transaction, which took place nearly three years before the trial below; that his business was very small at the time, and that he then kept no regular books, and had no record of the matter; that he did at the time in question almost exclusively a cash business, and made no inquiry as to who was purchasing from him in such transactions.

From the record before us we are unable to see how the judgment can be sustained. One theory upon which the action proceeded was that the defendant was liable as for having received and cashed a check of the corporation executed by an officer thereof in payment of the latter's private debt. There can be no doubt that where one receives the check of a corporation, executed by one of its officers, in payment of a debt known to the creditor to be such officer's private debt, the check carries notice upon its face of its "irregular and illegal character," and if accepted by the creditor the latter takes the risk of being called upon to restore the proceeds. [See St. Louis Charcoal Company v. Lewis, 154 Mo. App. 548, 136 S. W.

716.]    But this theory is not here tenable, for the reason that it does not appear that any private debt of the company's secretary was paid by the check. In fact nothing appears as to what took place, beyond the evidence on behalf of defendant tending to show that it was a cash transaction. It may be inferred that the defendant sold supplies of some sort to, or did repairing for, some one who gave this check in payment therefor; but it does not appear that there was anything to lead him to suppose that it was other than a company transaction. Plaintiff therefore cannot be permitted to recover upon this theory.

But plaintiff's case proceeds also upon the theory that, since the Continental Assurance Company had not complied with the insurance laws of this State, so as to entitle it to a license to do business as an insurance company, and had not obtained such license, it could transact no business whatsoever, and that the defendant was bound to take notice of its limited powers. As to this, plaintiff relies upon provisions of section 6900, Revised Statutes 1909, providing that when a certificate of incorporation shall have been issued to the corporators of such a company, "they shall be a body politic and corporate, and may proceed to organize in the manner set forth in their charter, and to open books for subscriptions to the capital stock of the company, and keep the same open until the whole amount specified in the charter is subscribed, but it shall not be lawful for such company to issue policies or transact any business of any kind or nature whatsoever, except as aforesaid, until they have fully complied with the requirements of this article."

And in this connection we are referred to Ellerbe v. Bank, 109 Mo. 445, 19 S. W. 241, in which the Supreme Court had occasion to consider the effect of this provision of the statute in question. But we think that what is there said as to the limited powers of such a corporation, prior to obtaining a license to do an in-

surance business, can have no application to the facts of the case before us. The statute provides that, after receipt of the certificate of incorporation, the corporators "may proceed to organize in the manner set forth in their charter, and to open books for subscriptions to the capital stock," etc. And though the statute forbids the company to issue policies to transact business "except as aforesaid," it is clear that upon the receipt of such certificate it becomes a corporate entity for the purpose of entering into contracts for the sale of its capital stock. [See Van Noy v. Insurance Co., 168 Mo. App. 1. c. 296, 153 S. W. 1090.] This much it may undoubtedly do. In the case before us there is no question as to the validity of any agreement claimed to have been made by the company, as in the Ellerbe case, supra. The record discloses absolutely nothing regarding the transaction in question, beyond the bare, naked fact that a check was issued in the company's name and delivered to the defendant. Plaintiff contends that, under the ruling in the Ellerbe case, supra, the defendant was bound to take notice of the limited powers of the corporation. But we fail to see how this can be here pertinent, in view of the fact that the record is barren of any evidence to show that the corporation did in fact exceed its corporate powers.

As said above, the corporation had authority to take subscriptions to its capital stock; and it is reasonable to suppose that incident to this it would be necessary that expense be incurred in procuring such subscriptions; and it may be that the item paid for by this check was an item of expense of this nature. It is unnecessary for us to say what powers the corporation might exercise in the premises, since for aught that here appears the promoters and incorporators thereof may have provided a fund for just such purposes, which for convenience was deposited in bank in the company's name and drawn upon to pay such expenses. We can only know what took place from

what appears in the record before us; and nothing whatsoever appears touching the matter, beyond the fact that a check was issued in the company's name.

The theory pursued by plaintiff appears to be that defendant was bound to take notice that this check was drawn upon funds, derived from the sale of the company's stock, which could not lawfully be diverted to the payment of preliminary expenses. But surely defendant cannot be held to notice of something which, from the record before us, is not shown to have occurred. There is absolutely no evidence that any such funds were drawn upon in issuing this check, or that any funds whatsoever were thereby misused. It is evident that the check was drawn upon some fund placed to the company's credit in bank; but by whom placed there, and for what purpose, does not appear. Under the evidence adduced, it may be that the promoters of the company personally provided funds to cover expenses incident to the procuring of subscriptions to the capital stock and which were disbursed by company checks. We cannot say otherwise when the record reveals nothing on this score. And in such a case we think it quite clear that the company, or its receiver, could not recover from one who had accepted a check drawn upon such fund in payment of some such item of expense.

To sustain plaintiff's contention would be to say that a check cannot lawfully be issued in the name of such a corporation, at the aforesaid period of its existence, though it be incident to the taking of subscriptions to its capital stock, and no matter from what source the funds upon which it is drawn are derived; and, though the corporation may have received and retained the benefits of the transaction, that nevertheless it or its receiver may afterwards recover the amount of such check, upon the mere showing, alone, that the defendant received and cashed the same. We are not prepared to so hold. The Ellerbe case, supra,

appears to be no authority in support of such a re-markable, not to say pernicious, doctrine.

Beyond this we express no opinion regarding the operation and effect of the aforesaid statutory provisions; confining our decision to the facts of this record, and leaving that question to be dealt with when it is before us.

And relative to plaintiff's right to recover in this proceeding, it may be well to observe that this is an action for money had and received, which, though maintainable at law, is of an equitable character, governed by principles of equity, and, in general, lies whenever one person has received money belonging to another, which in justice and good conscience he should not be permitted to retain. [See Stout v. Hardware Co., 131 Mo. App. l. c. 529, 110 S. W. 619, and authorities cited; Henderson v. Koenig, 192 Mo. 709, 91 S. W. 88.] And as said by GOODE, J., in Stout v. Hardware Co., supra, "a fact essential to the remedy is that the person who received the money is not entitled, in good conscience, to retain it." In the case before us the evidence supports the inference that the defendant in good faith furnishes supplies, or work and labor, or both, and received in payment therefor the company's check. Surely something must appear to show that the defendant is not now entitled, in equity and good conscience, to retain the proceeds thereof, in order to entitle plaintiff to recover in this action.

Upon the whole, we see nothing in the record to authorize a recovery by plaintiff. The judgment should therefore be reversed, without remanding the cause. It is so ordered. *Reynolds, P. J., and Nortoni, J.*, concur.